[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 26, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15969
Non-Argument Calendar

_____

D. C. Docket No. 06-60979-CV-JAL

ADEM A. ALBRA,

                                                        Plaintiff-Appellant,

                            versus

ADVAN, INC.,
WAYNE ABBOTT,
TROY ABBOTT,
MYRIAM ABBOTT,

                                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 26, 2007)**

Before BLACK, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Adem Albra, proceeding pro se, appeals the district court's dismissal of his complaint brought pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et. seq., and the Florida Omnibus AIDS Act ("FOAA"), Fla. Stat. § 760.50. As a matter of first impression, we hold that individuals are not amenable to private suit for violating the ADA's anti-retaliation provision, 42 U.S.C. § 12203, where the act or practice opposed by the plaintiff is made unlawful by the ADA provisions concerning employment, 42 U.S.C. §§ 12111-12117. We also hold that individuals are not amenable to private suit for violating § 760.50(3)(b) of the FOAA.

## I. BACKGROUND

On July 3, 2006, Albra filed a pro se complaint against his employer, Advan, Inc., and Advan officers Wayne Abbott, Troy Abbott, and Myriam Abbott (collectively, the "Abbotts"). In the complaint, Albra alleged discrimination and retaliation based on his HIV status in violation of the ADA and the FOAA. On August 8, 2006, Albra executed service to Advan's registered agent, Wayne Abbott, by sending a copy of the summons (but not the complaint) via U.S. mail. The Return of Service showed that Albra listed himself as the process server. On August 17th, Myriam was served by a non-party to the lawsuit. Albra filed a

notice of Advan's failure to answer the complaint on August 28th. In that notice, Albra stated that he had "followed Rule 4 of the Federal Rules of Civil Procedure and mailed the summons to the Registered Agent of the Corporation, Wayne Abbott." On August 31st, service was executed to Wayne in his personal capacity.

On September 19th, pursuant to Federal Rule of Civil Procedure 12(b)(5), Advan filed a motion to dismiss the complaint for insufficiency of service. On that same date, pursuant to Rule 12(b)(6), Myriam and Wayne filed a motion to dismiss for failure to state a claim upon which relief may be granted on the ground that claims against individual defendants are not cognizable under either the ADA or the FOAA. Finally, service was executed to Troy on October 4th, and shortly thereafter, he notified the district court that he joined in Myriam and Wayne's motion to dismiss.

In a written order, the district court granted Advan's motion to dismiss, concluding that Albra had failed to effectuate service upon Advan in accordance with Rule 4(c) because he had personally served Advan through the mail. In that same order, the court granted the Abbotts' motion to dismiss, holding that neither the ADA nor the FOAA countenance individual liability. In so holding, the court dismissed Albra's complaint against Advan without prejudice and dismissed the complaint with prejudice as to the Abbotts. Albra now appeals.

3

## II. DISCUSSION

On appeal, Albra argues that the district court erred in dismissing his complaint because (1) Advan was properly served, and (2) individual defendants may be liable under the ADA and the FOAA. Advan has moved for sanctions pursuant to Federal Rule of Appellate Procedure 38 on the ground that Albra's appeal is frivolous. We address each argument in turn.[1]

## A. Service of Advan

Albra argues that service to Advan was proper because he mailed a copy of the summons to Advan's registered agent, Wayne Abbott, who was also named as a defendant in the action. "We review the district court's grant of a motion to dismiss for insufficient service of process under [Federal Rule of Civil Procedure] 12(b)(5) by applying a de novo standard to the law and a clear error standard to any findings of fact." Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries, 353 F.3d 916, 920 (11th Cir. 2003).

Federal Rule of Civil Procedure 4(c) provides that service of process shall be effected by serving a summons "*together with a copy of the complaint. . . .* within the time allowed under [Rule 4(m)] . . . . by any person *who is not a party* and who

---

[1] Albra also raises several other arguments on appeal that were not presented in the district court below. "[A]rguments not presented in the district court will not be considered for the first time on appeal." Sterling Fin. Inv. Group, Inc. v. Hammer, 393 F.3d 1223, 1226 (11th Cir. 2004). We therefore do not address these arguments.

is at least 18 years of age." Fed. R. Civ. P. 4(c) (emphasis added). A defendant's actual notice is not sufficient to cure defectively executed service. See Schnabel v. Wells, 922 F.2d 726, 728 (11th Cir. 1991) (interpreting former Rule 4(j)), superseded in part by rule as stated in Horenkamp v. Van Winkle And Co., Inc., 402 F.3d 1129, 1132 n.2 (11th Cir. 2005). And although we are to give liberal construction to the pleadings of pro se litigants, "we nevertheless have required them to conform to procedural rules." Loren v. Sasser, 309 F.3d 1296, 1304 (11th Cir. 2002).

Here, the record demonstrates that Albra, the plaintiff in the suit, served Advan by mailing a copy of the summons without attaching a copy of the complaint. Accordingly, Albra failed to properly effect service upon Advan in accordance with Rule 4(c), and the district court's grant of Advan's motion to dismiss was proper.

## B. **Dismissal of Albra's Complaint against the Abbotts**

Albra also argues that the Abbots, as owners, officers, and managers of Advan, constitute "employers" under the ADA and the FOAA, and the district court thus erred in dismissing his complaint against them. A district court's dismissal for failure to state a claim under Rule 12(b)(6) is reviewed de novo. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). Questions of law, such as the

5

construction of a statute, are also reviewed de novo. Konikov v. Orange County, Fla., 410 F.3d 1317, 1321 (11th Cir. 2005).

## 1. ADA Claims

The ADA prohibits disability discrimination in three areas: employment, public services, and public accommodations. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1166 n.5 (11th Cir. 2003). Subchapter I of the ADA, which prohibits discrimination on account of disability in employment, covers the same employers and provides the same remedies contained in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e(b). See 42 U.S.C. §§ 12111-12117. Subchapter II bars discrimination by any state or local government entity (that is, discrimination in public services) and affords the remedies outlined in Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. See 42 U.S.C. §§ 12131-12165. Subchapter III prohibits discrimination by public accommodations and incorporates the remedies of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a-3(a). See 42 U.S.C. §§ 12181-12189. And Subchapter IV sets forth various miscellaneous provisions, including the ADA's anti-retaliation provision, 42 U.S.C. § 12203. See 42 U.S.C. §§ 12201-12213.

### a. Discrimination Under the ADA

Albra argues that the Abbotts are personally liable under the ADA for

6

discriminating against him on account of his HIV status. The anti-discrimination provision of Subchapter I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The term "covered entity" means "an employer, employment agency, labor organization, or joint labor-management committee." Id. § 12111(2).

The ADA's definition of "employer" is similar to that under Title VII and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 630(b), and this court has held that neither of those Acts countenance individual liability. Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996). In light of our construction of Title VII and the ADEA, we also have held that individual defendants are not amenable to private suit for violating the anti-discrimination provision of Subchapter I of the ADA. Id.

Here, Albra's ADA discrimination claim names the Abbotts as defendants in their individual capacities. Because individual liability is precluded for violations of the ADA's employment discrimination provision, we conclude that the district court properly dismissed Albra's discrimination claim against the Abbotts.

7

*b. Retaliation Under the ADA*

The ADA's general anti-retaliation provision provides that "[n]o *person* shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter . . . ." 42 U.S.C. § 12203(a) (emphasis added). In the instant case, Albra argues that the Abbotts are personally liable under the ADA for retaliating against him after he filed formal charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations. Thus, the issue before this court is whether individual defendants may be personally liable for violating the ADA's anti-retaliation provision when the "act or practice" opposed by the plaintiff is made unlawful by the ADA provisions concerning employment (Subchapter I).

In Shotz, a panel of this court held that individual liability is not precluded for violations of the ADA's anti-retaliation provision, 42 U.S.C. § 12203(a), where the act or practice opposed by the plaintiff is made unlawful by the ADA provisions concerning *public services*, 42 U.S.C. §§ 12131-12165 (Subchapter II). Shotz, 344 F.3d at 1179-80. In so holding, the Shotz panel first examined the plain language of § 12203 and noted that this provision "is the only anti-discrimination provision in the ADA that uses the unqualified term 'person' to define the regulated entity." Id. at 1168. The panel also observed that in Subchapter I of the

8

ADA (the provisions regarding employment), the term "person" is defined to include "individuals." Id. Stating that it "may consider Congress's use of a particular term elsewhere in the statute to determine its proper meaning within the context of the statutory scheme[,]" the Shotz panel concluded that "the anti-retaliation provision not only unequivocally confers on those whom it protects a federal right to be free from retaliation, but also imposes a correlative duty on all individuals to refrain from such conduct." Id. But according to the panel, "[t]hat a statutory provision imposes such a duty on a class of actors . . . does not compel the further conclusion that individual members of that class are amenable to private suit or otherwise liable for a breach of that duty." Id.

The Shotz panel then examined the remedies created by the ADA, noting that the remedies for persons injured by retaliation in the public services context incorporate the remedies set forth in Title VI of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000d et seq., and courts generally have concluded that Title VI precludes individual liability. Shotz, 344 F.3d at 1169-75. But the panel went on to state that "[e]ven were we to ignore the plain meaning [of § 12203(a)] and look only to the available Title VI remedies in determining the scope of liability, we still could not conclusively establish that Congress intended to preclude individual liability under § 12203." Id. at 1173. According to the panel, such an "approach

9

might make sense for a violation of § 12203 in the employment context[,]" as in that context, "the aggrieved person is ultimately referred to the remedies provided by Title VII of the Civil Rights Act of 1964, which prohibits discrimination by the same entities as prohibited by Subchapter I of the ADA regulating employment, and . . . those remedies do not include suit against individuals." Shotz, 344 F.3d at 1173 (citations omitted). But the Shotz panel determined that in the public services context, "allowing the remedial provisions to govern the scope of liability would deviate considerably from the intent and purpose of the statute" because "[t]he ADA makes *any* public entity liable for prohibited acts of discrimination, regardless of funding source[,]" while "Title VI remedies are available only against federal funds recipients." Id. at 1174 (citation omitted) (emphasis in original). The panel therefore concluded that the scope of liability of § 12203 in the public services context could not be confined to that of Title VI. Id. at 1175.

Finding the plain language and statutory structure unhelpful in ascertaining Congress's intent, the Shotz panel turned to the legislative history and purpose of the ADA and found both to be "equally unhelpful." Id. at 1176-77.

The panel then examined the Department of Justice ("DOJ") regulations construing the ADA. Id. at 1177. The relevant DOJ regulation provides that "[n]o private or public entity shall discriminate against any individual because that

10

individual has opposed any act or practice made unlawful by this part . . . ."  28

C.F.R. § 35.134.  The DOJ defines a "private entity" as "a *person* or entity other

than a public entity."  28 C.F.R. § 36.104 (emphasis added).  And the appendix to

the regulations provides that

> Section 35.134 implements section 503 of the ADA, which prohibits
> retaliation against any individual who exercises his or her rights under
> the Act. . . .  [T]he section applies not only to public entities subject to
> this part, but also to persons acting in an individual capacity or to
> private entities.  For example, it would be a violation of the Act and
> this part for a private individual to harass or intimidate an individual
> with a disability in an effort to prevent that individual from attending
> a concert in a State-owned park.

28 C.F.R. pt. 35, App. A at 532, 56 Fed.Reg. 35,696, 35,707 (July 26, 1991)

("Preamble to Regulation on Nondiscrimination on the Basis of Disability in State

and Local Government Services," "Section-by-Section Analysis").  From this

language, the Shotz panel concluded that the DOJ "has interpreted § 12203 as

rendering those individuals acting in their individual capacities amenable to private

suit."  Shotz, 344 F.3d at 1177.

After stating that "Congress expressly authorized the Attorney General to

make rules with the force of law interpreting and implementing the ADA

provisions generally applicable to public services[,]" the Shotz panel concluded

11

that the DOJ's construction of § 12203 was reasonable and accorded Chevron[2] deference to the DOJ regulations. Id. at 1179. The panel thus held that "an individual may be sued privately in his or her personal capacity for violating § 12203 in the public services context." Id. at 1180.

In reaching its holding, the Shotz panel expressly declined to decide whether individual liability is also precluded for violation of the ADA's anti-retaliation provision in the employment context. Id. at 1173. Thus, as stated above, the question before us in the instant case is whether individual defendants may be personally liable for violating § 12203 when the act or practice opposed by the plaintiff is made unlawful by the ADA provisions concerning employment—that is, Subchapter I.

We first look to the plain language of § 12203(a), which, again, provides that "[n]o *person* shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter . . . ." 42 U.S.C. § 12203(a) (emphasis added). As the Shotz panel noted, § 12203(a) "is the only anti-discrimination provision in the ADA that uses the unqualified term 'person' to define the regulated entity[,]" and Subchapter I of the ADA defines the word "person" to include "individuals." Shotz, 344 F.3d at 1168 (citing 42 U.S.C.

_____

[2] Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

12

§ 12111(7)).  But Subchapter I's definition of "person" explicitly incorporates the definition of "person" articulated in Title VII.  42 U.S.C. § 12111(7) ("The term[ ] 'person' . . . shall have the same meaning given such term[ ] in section 2000e of this title[,]" which defines "person" as, <u>inter alia</u>, "includ[ing] one or more individuals," 42 U.S.C. § 2000e(a)).  And although Title VII defines the term "employer" to include "persons," and the term "persons" is defined to include "individuals,"[3] 42 U.S.C. § 2000e(a)-(b), this court has long held that individuals are not amenable to private suit under Title VII.  <u>Mason</u>, 82 F.3d at 1009; <u>Smith v. Lomax</u>, 45 F.3d 402, 403 n.4 (11th Cir. 1995); <u>Busby v. City of Orlando</u>, 931 F.2d 764, 772 (11th Cir. 1991).  Thus, § 12203's use of the word "person" rather than the term "entity" or "employer" is not dispositive in determining whether an individual may be personally liable for violating this provision.  <u>See</u> <u>Shotz</u>, 344 F.3d at 1168.  We therefore turn to the remedies created by the statute.

The remedies for violation of the ADA's anti-retaliation provision in the employment context are set forth in 42 U.S.C. § 12117.  42 U.S.C. § 12203(c).[4]

---

[3] "The term '*employer*' means *a person* engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ."  42 U.S.C. § 2000e(b) (emphasis added).  "The term '*person*' includes one or more *individuals*, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations . . . ."  <u>Id.</u> § 2000e(a) (emphasis added).

[4] Section 12203(c) provides:
The remedies and procedures available under sections 12117, 12133, and 12188

Section 12117, in turn, explicitly incorporates the remedies available under Title

VII. See id. § 12117(a);[5] Baird v. Rose, 192 F.3d 462, 471-72 (4th Cir. 1999).

Title VII "prohibits discrimination *by the same entities as prohibited by*

*Subchapter I* of the ADA regulating employment . . . ." Shotz, 344 F.3d at 1173

(emphasis added). And, as stated above, this court has held that there is no

individual liability for violations of Title VII. Mason, 82 F.3d at 1009; Smith, 45

F.3d at 403 n.4; Busby, 931 F.2d at 772. Thus, in Mason, this court construed the

ADA's employment discrimination provision, 42 U.S.C. § 12112(a), in light of

Title VII and concluded that "there is no sound reason to read the [ADA] any

differently from this Court's reading of Title VII . . . ." Mason, 82 F.3d at 1009.

In Shotz, this court determined that limiting the scope of remedies for

violations of § 12203 in the public services context (Subchapter II) to that available

under Title VI "would deviate considerably from the intent and purpose of the

---

> of this title shall be available to aggrieved persons for violations of subsections (a) and (b) of this section, with respect to subchapter I, subchapter II and subchapter III of this chapter, respectively.

42 U.S.C. § 12203(c).

[5] Section 12117(a) provides:
> The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides to the [Equal Employment Opportunity] Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment.

42 U.S.C. § 12117(a).

[ADA,]" because Subchapter II of "the ADA makes *any* public entity liable for prohibited acts of discrimination, regardless of funding source[,]" while "Title VI remedies are available only against federal funds recipients." Shotz, 344 F.3d at 1174 (emphasis in original). But in the employment context, "the aggrieved person is ultimately referred to the remedies provided by Title VII[,] . . . which prohibits discrimination *by the same entities as prohibited by Subchapter I* of the ADA regulating employment, and . . . those remedies *do not include suit against individuals*." Shotz, 344 F.3d at 1173 (citations omitted) (emphasis added). Thus, unlike the public services context at issue in Shotz, limiting the scope of remedies available for violations of § 12203 in the employment context to those remedies available under Title VII would not deviate considerably from the intent and purpose of the ADA. And unlike the DOJ regulations interpreting the ADA (at issue in Shotz), neither the EEOC regulations interpreting the ADA nor the EEOC's interpretive guidance accompanying those regulations state that individuals acting in their individual capacities are amenable to private suit.[6] See

_____

[6] Although Congress delegated authority to the EEOC to implement Subchapter I of the ADA, see 42 U.S.C. § 12116, the ADA's anti-retaliation provision, § 12203, is outside of Subchapter I, and the Supreme Court has stated that "[n]o agency . . . has been given authority to issue regulations implementing the generally applicable provisions of the ADA." Sutton v. United Airlines, Inc., 527 U.S. 471, 479, 119 S.Ct. 2139, 2145, 144 L.Ed.2d 450 (1999). As such, the degree of deference, if any, courts owe the EEOC regulations implementing the ADA's generally applicable provisions is an open question. See id. at 480, 119 S.Ct. at 2146; Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 194, 122 S.Ct. 681, 689, 151 L.Ed.2d 615 (2002); Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 762 n.7 (3d Cir.

15

29 C.F.R. § 1630.2; 29 C.F.R. pt. 1630, App., 56 Fed. Reg. 35,726, 35,739-35,753 (July 26, 1991) ("Interpretive Guidance on Title I of the Americans with Disabilities Act").

For these reasons, we conclude that individual liability is precluded under § 12203 where the act or practice opposed by the plaintiff is made unlawful by Subchapter I of the ADA.

## 2.  FOAA Claim

Finally, Albra argues that the Abbotts are personally liable for discriminating against him in violation of the FOAA, Fla Stat. § 760.50.  In relevant part, the FOAA provides:

> No person may fail or refuse to hire or discharge any individual, segregate or classify any individual of employment opportunities or adversely affect his status as an employee, or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment on the basis of knowledge or belief that the individual has taken a human immunodeficiency virus test or the results or perceived results of such test unless the absence of human immunodeficiency virus infection is a bona fide

---

2004); Waldrip v. Gen. Elec. Co., 325 F.3d 652, 655 n.1 (5th Cir. 2003); Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 468 n.2 (4th Cir. 2002).  Nonetheless, the Supreme Court's pronouncements in Sutton and Toyota strongly suggest that these regulations are *not* entitled to Chevron deference to the extent they interpret ADA provisions outside of Subchapter I.  See Sutton, 527 U.S. at 479-80, 119 S.Ct. at 2145-46; Toyota, 534 U.S. at 194, 122 S.Ct. at 689; see also Waldrip, 325 F.3d at 655 n.1.  Here, however, we need not determine what deference is due because, as stated above, the relevant regulations and interpretive guidelines do not state that individuals acting in their individual capacities are amenable to private suit.  See 29 C.F.R. § 1630.2; 29 C.F.R. pt. 1630, App., 56 Fed. Reg. 35,726, 35,739-35,753 (July 26, 1991) ("Interpretive Guidance on Title I of the Americans with Disabilities Act").

occupational qualification of the job in question.

Fla. Stat. § 760.50(3)(b).

Although this court has yet to address the issue of individual liability under the FOAA, in Huck v. Mega Nursing Services, Inc., the District Court for the Southern District of Florida found "the spirit of the [FOAA]" to be similar to that of Title VII and the ADA "in the area of employer/employee liability." 989 F. Supp. 1462, 1464 (S.D. Fla. 1997). The Huck court thus concluded that

> In light of the language of the [FOAA] and upon reviewing the case law of similar statutes, this Court is convinced that the Florida Legislature did not intend to provide a cause of action against individual employees. Rather, the [FOAA] creates a cause of action for employees who have been discriminated against by their employing entity.

Id. at 1464-65. We agree.

Section 760.50(2) of the FOAA provides that "[a]ny person with or perceived as having [AIDS, AIDS-related complex, or HIV] shall have *every protection* made available to *handicapped persons*." Fla. Stat. § 760.50(2) (emphasis added). The Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.01-760.10, provides that it is an unlawful employment practice for an employer to discriminate against an individual on the basis of, inter alia, an individual's *"handicap."* Fla. Stat. § 760.10(1)(a) (emphasis added). "The FCRA is modeled after Title VII, so that federal case law regarding Title VII is applicable

to construe the Act." Byrd v. BT Foods, Inc., 948 So. 2d 921, 925 (Fla. 4th DCA 2007). "As applied to discrimination based on a *handicap*, the FCRA is construed in conformity with the federal Americans with Disabilities Act (ADA)."[7] Id. (emphasis added); McCaw Cellular Commc'ns of Fla. v. Kwiatek, 763 So. 2d 1063, 1065 (Fla. 4th DCA 1999).

Because the FOAA provides that persons with HIV or AIDS "shall have every protection made available to *handicapped* persons," Fla. Stat. § 760.50(2) (emphasis added), the FCRA prohibits employment discrimination on the basis of an individual's *handicap*, Fla. Stat. § 760.10(1)(a), and the FCRA is to be "construed in conformity with the" ADA, Byrd, 948 So. 2d at 925, we conclude that the FOAA's employment discrimination provisions shall also be construed in conformity with the ADA. And because we have held that individual liability is precluded for violations of the ADA's anti-discrimination provision in the employment context, Mason, 82 F.3d at 1009, we thus conclude that an individual may *not* be sued privately in his or her personal capacity for violating the FOAA's employment discrimination provisions. Accordingly, the district court's dismissal

---

[7] Notably, the District Courts of the Middle, Northern, and Southern District of Florida have held that individual employees may not be sued under the FCRA's employment discrimination provisions. See Lapar v. Potter, 395 F. Supp. 2d 1152, 1160 (M.D. Fla. 2005); King v. Auto, Truck, Indus. Parts and Supply, Inc., 21 F. Supp. 2d 1370, 1382-83 (N.D. Fla. 1998); Huck, 989 F. Supp. at 1464. Thus, persons claiming employment discrimination based on a *handicap* may *not* sue *individual* defendants in their individual capacities under either the FCRA or the federal ADA. See Lapar, 395 F. Supp. 2d at 1160; Mason, 82 F.3d at 1009.

18

of Albra's FOAA claim against the Abbots was proper.

## C. **Advan's Motion for Rule 38 Sanctions**

Advan argues that this court should impose sanctions against Albra under Federal Rule of Appellate Procedure 38 because Albra's claims on appeal are "frivolous" in light of the "well-settled law." Rule 38 provides that "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Fed. R. App. P. 38.

Here, Albra's appeal was not "frivolous," as this court's resolution of the appeal required us to decide *two* issues of first impression in this circuit. We therefore deny Advan's motion for Rule 38 sanctions.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's dismissal of Albra's complaint against Advan and the Abbotts, and we **DENY** Advan's motion for sanctions.