[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11793
Non-Argument Calendar
_____

D.C. Docket No. 6:17-cv-00848-PGB-KRS

RAJKO DUGANDZIC,

Plaintiff-Appellant,

versus

NIKE, INC.,
a foreign corporation for profit authorized
to do business in Florida,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 30, 2020)

Before WILSON, MARTIN and BLACK, Circuit Judges.

PER CURIAM:

Rajko Dugandzic, a native of Croatia, appeals the district court's order granting summary judgment to Nike, Inc., his former employer, and the court's refusal to reconsider its order, as to (1) his claims of hostile work environment under Title VII of the Civil Rights Act of 1964 (Title VII) and the Florida Civil Rights Act (FCRA), and (2) his claims of retaliation under Title VII and the FCRA. We address each claim in turn. After review, we reverse and remand on the harassment claim so that the district court considers all the relevant evidence in determining whether the harassment was severe and pervasive. We also affirm the district court's grant of summary judgment to Nike on the retaliation claim.

## I. DISCUSSION

### A. Harassment Claim

#### 1. Sham Affidavit Rule

The district court stated that Dugandzic's affidavit and Jorge Flores's affidavit alleged that Dugandzic's supervisor mocked Dugandzic "on a daily basis" and "over the employee intercom system." However, the district court found this was contradicted by Dugandzic's deposition, in which Dugandzic stated that his supervisor mocked his voice between only 10 to 15 times total. The district court also recounted that Dugandzic stated the mocking happened only in the break room. Due to the conflicting testimony, the district court disregarded the

2

allegations contained in the two affidavits regarding daily mocking and mocking over the intercom.

Dugandzic contends the district court misapplied the Sham Affidavit Rule to exclude the statements. He asserts the Flores affidavit could not be a sham because Flores was never deposed; thus, his sworn statement could not contradict his prior deposition testimony. He also contends his own affidavit was not a sham because the minor inconsistencies merely created a question of credibility for the jury because his earlier deposition testimony was neither clear nor unambiguous. He argues any potential inconsistencies were likely due to the need for an interpreter and the comments taken together demonstrate ambiguity in his testimony that would prevent the use of the Sham Affidavit Rule.

This Court reviews a district court's decision to strike an affidavit as a "sham" for abuse of discretion. *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1306 (11th Cir. 2016). As such, the appellant must demonstrate that the district court's ruling "rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *Id.*

In limited circumstances, a district court may "disregard an affidavit as a matter of law when, without explanation, it flatly contradicts his or her own prior deposition testimony for the transparent purpose of creating a genuine issue of fact where none existed previously." *Id.* at 1306. However, "the rule only operates in a

limited manner to exclude unexplained discrepancies and inconsistencies, as opposed to those which create an issue of credibility or go to the weight of the evidence." *Id.* (quotations omitted). The district court should apply the rule "sparingly because of the harsh effect it may have on a party's case." *Id.* at 1307 (quotations omitted).

The district court abused its discretion in striking the statements in the Flores and Dugandzic affidavits. To begin with, Flores was never deposed, and thus the statements in his affidavit could not contradict his own deposition testimony. *See id.* at 1306. As to Dugandzic's statements in his deposition, those statements were answers to the questions asked of him and could have been qualified by those questions. Dugandzic's testimony was certainly confusing on this issue. While Dugandzic at first stated his supervisor did not mock his voice too many times because she was afraid she was going to be overheard and that she had mocked his voice a few times in the break room, the follow up questions were all limited to his supervisor's actions in the break room. That Dugandzic testified that his supervisor mocked him 10 to 15 times in the break room is not necessarily contradicted by the statement in his affidavit that she subjected him to daily mocking and mocked his accent over the intercom. If anything, the possible inconsistencies of the statements could reflect on Dugandzic's credibility, which is a jury question. *See id.* Thus, the district court should have accepted the

4

statements in the affidavits and considered them in deciding the summary judgment motion.

## 2. *Evidence considered*

In granting summary judgment to Nike, the district court considered only the instances where the supervisor mocked Dugandzic's accent or manner of speech as conduct based on Dugandzic's national origin. The district court did not consider allegations that the supervisor followed Dugandzic, asked for him over the intercom, blew in his face, failed to greet him, or yelled "Boo" at him as evidence of harassment. In concluding that the alleged harassment Dugandzic suffered was not sufficiently severe or pervasive to create an actionable hostile work environment, the district court determined the supervisor's mocking of Dugandzic's accent between 10 and 15 times was neither frequent nor severe enough to alter the terms and conditions of employment. Therefore, because Dugandzic could not satisfy the *prima facie* case of harassment on the severe or pervasive factor, the district court granted summary judgment to Nike.

Dugandzic argues that only considering the instances where his supervisor mocked his accent and manner of speech in determining whether the conduct was severe or pervasive was error. He contends the district court failed to perceive the motivation behind each act of harassment as being related to his national origin and therefore disregarded portions of evidence that should have been considered, and

5

that the district court's failure to consider the other pieces of evidence had a direct impact on its subsequent severity factor analysis.  He also asserts that contrary to Nike's argument, his supervisor's "purported ignorance" of his Croatian background did not preclude recovery on his hostile work environment claim and that his national origin and accent are "inextricably intertwined."  He asserts the evidence established a material fact as to whether all his supervisor's conduct was motivated by his national origin because she admitted she perceived him as having a "foreign accent."  He contends the cumulative effect of his supervisor's discriminatory conduct creates a genuine issue of material fact as to whether the harassment was severe or pervasive.

We review *de novo* the district court's grant of summary judgment and apply the same legal standard used by the district court.  *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*).  "[S]ummary judgment is appropriate if the evidence before the court shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Id.* at 1023 (quotations omitted).

Title VII prohibits an employer from discriminating against a person with respect to the "terms, conditions, or privileges of employment, because of such

individual's . . . national origin."[1]  42 U.S.C. § 2000e-2(a)(1).  To establish a *prima facie* case of a hostile work environment, a plaintiff may show that:  (1) he belongs to a protected group; (2) he has been subject to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for such environment under a theory of vicarious or of direct liability. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

The requirement that the harassment be "severe or pervasive" contains an objective and a subjective component.  *Id*. at 1276.  To be actionable, behavior must result in "both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives . . . to be abusive."  *Id*. (quotations omitted).  In determining the objective severity of the harassment, we employ a totality of the circumstances approach by considering four factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the

---

[1]   The FCRA similarly prohibits an employer from discriminating against a person with respect to the "terms, conditions, or privileges of employment" based on an individual's national origin.  Fla. Stat. § 760.10(1)(a).  Because the FCRA is patterned after Title VII, cases construing Title VII are applicable to claims brought under the FCRA.  *See Albra v. Advan, Inc.*, 490 F.3d 826, 834 (11th Cir. 2007).

employee's job performance." *Id.*   Courts should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms of the plaintiff's employment and create a hostile or abusive working environment.  *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (*en banc*).

The district court erred when it considered only the 10 to 15 instances where his supervisor mocked Dugandzic's accent and linguistic mannerisms as harassment based on his national origin.  Viewing the facts in the light most favorable to Dugandzic, based on his supervisor's mocking of Dugandzic's accent, it is a permissible view of the evidence that his supervisor's other allegedly harassing conduct was also motivated by his national origin.  *See Chapman*, 229 F.3d at 1023 (explaining all evidence and factual inferences reasonably drawn from the evidence are viewed in the light most favorable to the party opposing summary judgment).  The district court erred in dismissing out of hand any evidence of alleged harassment that was not facially based on Dugandzic's national origin.

Further, we reject Nike's argument that because Dugandzic's supervisor did not know that Dugandzic was Croatian she could not have discriminated against him based on his national origin.  If she was mocking his "foreign accent," it

8

follows that she could be harassing him based on his national origin even if she did not know the specific national origin.

Because the district court did not consider all the relevant evidence and the totality of the circumstances in deciding whether Dugandzic could make a *prima facie* case of harassment, we reverse the district court's grant of summary judgment to Nike on this issue, and remand for the district court to consider, using all the relevant evidence, whether the conduct is sufficient to meet the severe and pervasive prong of a *prima facie* case of harassment in the first instance.

B.  *Retaliation*

Dugandzic also contends the district court erred in granting summary judgment to Nike as to his retaliation claim, based on its finding that he did not establish that Nike's legitimate, non-discriminatory reasons for firing him were pretextual.  Title VII prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); *Coutu v. Martin Cty. Bd. of Cty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995).[2]

---

[2] The FCRA similarly prohibits an employer to "discriminate against any person because that person has opposed any practice which is an unlawful employment practice."  Fla. Stat. § 760.10(7).

If a plaintiff establishes a *prima facie* of retaliation, and the employer articulates one or more legitimate, non-discriminatory reasons for the employment decision, then the plaintiff, in order to survive the motion for summary judgment, must show that the reasons proffered by the defendant were not the true ones, but were more likely pretexts for retaliation. *See Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1314 (11th Cir. 2018). Ultimately, an employee must show that the retaliatory motive was the "but-for" cause of the challenged action. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

A reason is pretextual only if it is false and the true reason for the decision is retaliatory. *See Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (defining pretext in the discrimination context). If the employer's reason is "one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman*, 229 F.3d at 1030. The plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *McCann*, 526 F.3d at 1375 (citation omitted). We have repeatedly stated we will not second-guess the wisdom of an employer's decision as long as the decision is not for a retaliatory reason. *See e.g.*, *Chapman*, 229 F.3d at 1030 (defining pretext

10

in the discrimination context).  Moreover, "[i]n order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that *each* of the employer's proffered nondiscriminatory reasons is pretextual."  *Id.* at 1037 (emphasis added).

The district court did not err by granting summary judgment to Nike on Dugandzic's retaliation claim based on its finding that Dugandzic failed to establish pretext.  Dugandzic's assertions that the investigation of his complaints was flawed and that the review of the video was a "false narrative" were insufficient to show that Nike's reasons for firing him—making derogatory statements about his supervisor based on her race and sexual orientation and making false allegations of discrimination—were false.  At most, this presents a mere *scintilla* of evidence of bias, which is insufficient.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (stating the party opposing summary judgment must present more than a *scintilla* of evidence in support of its position so that a jury can reasonably find for it).  Instead, his arguments would lead us to impermissibly second-guess the wisdom of Nike's decision.  *See Chapman*, 229 F.3d at 1030.  Therefore, we affirm in this respect.

## II.  CONCLUSION

Because the district court did not consider all the relevant evidence in its decision on Dugandzic's harassment claim, we reverse and remand to the district

11

court to consider that evidence in the first instance in making a determination if the

harassment was severe and pervasive.  However, we affirm the district court's

grant of summary judgment to Nike on Dugandzic's retaliation claim.[3]

**REVERSED AND REMANDED IN PART; AFFIRMED IN PART.**

---

[3] We likewise reverse and remand in part (as to the harassment claim) and affirm in part (as to the retaliation claim) the district court's denial of reconsideration.  *See Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1343 n.20 (11th Cir. 2010) (reviewing the denial of a Rule 59(e) motion for an abuse of discretion).