[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-10664

Non-Argument Calendar

_____

ALEXANDER EUGENIO MOSKOVITS,

Plaintiff-Appellant,

*versus*

MERCEDES-BENZ USA, LLC,
AUTONATION, INC., L.P.
EVANS MOTORS WPB, INC.,
d.b.a.
Mercedes-Benz of Miami,
JUDGE MAVEL RUIZ,
RICHARD IVERS,
REX RUSSO,
NANCY GREGOIRE,
U.S. DEPARTMENT OF STATE,

2                    Opinion of the Court                    22-10664

(DOS),

UNKNOWN AGENTS,

(Does 1 through 10, inclusive),

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cv-20122-JEM

_____

Before LAGOA, BRASHER, and BLACK, Circuit Judges.

PER CURIAM:

Alexander Moskovits, proceeding *pro se*, appeals from the district court's order dismissing his amended complaint with prejudice. Moskovits asserts the district court erred in adopting the magistrate judge's report and recommendation (R&R) and dismissing his claims against all of the defendants. We address each of his arguments in turn. After review, we affirm.

## I.  DISCUSSION

### A.  *Judge Mavel Ruiz*

Moskovits asserts his claims against Judge Ruiz were not barred by the Eleventh Amendment, the judicial immunity doctrine, and qualified immunity.

The district court did not err in finding Judge Ruiz was entitled to Eleventh Amendment immunity, absolute judicial immunity, and qualified immunity.[1]  Moskovits's claims against Judge Ruiz stem solely from her adjudications throughout the course of the state proceedings.  Moskovits states on appeal that he sued Judge Ruiz only in her individual capacity.  To the extent his claims against Judge Ruiz can be construed as being against her in her individual capacity, the district court did not err in dismissing them based on Eleventh Amendment immunity.  The State of Florida has not consented to this suit, and Congress has not abrogated Eleventh Amendment immunity as to any of the claims.  *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363-64 (2001) (explaining Eleventh Amendment immunity bars suits by private individuals against a state in federal court unless the state has

---

[1] We review the grant of a motion to dismiss based on a state's Eleventh Amendment immunity, whether an official is entitled to absolute immunity, and the dismissal of a complaint based on qualified immunity *de novo*.  *In re Emp. Discrimination Litig. Against State of Ala.*, 198 F.3d 1305, 1310 (11th Cir. 1999) (Eleventh Amendment immunity); *Stevens v. Osuna*, 877 F.3d 1293, 1301 (11th Cir. 2017) (absolute immunity); *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (qualified immunity).

4                    Opinion of the Court                22-10664

consented to be sued, has waived its immunity, or Congress has abrogated the state's immunity).  Moreover, the fact Moskovits filed a § 1983 claim does not circumvent Eleventh Amendment immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120 (1984) (stating § 1983 does not override states' Eleventh Amendment immunity, meaning "if a § 1983 action alleging a constitutional claim is brought directly against a State, the Eleventh Amendment bars a federal court from granting any relief on that claim").

As to Moskovits's claims against Judge Ruiz in her individual capacity, the district court did not err in concluding absolute judicial immunity applies because the allegations stemmed from her conduct in her judicial capacity, and she did not act in the clear absence of jurisdiction. *See Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005) (explaining judges enjoy absolute judicial immunity when they act in their judicial capacity as long as they do not act "in the clear absence of all jurisdiction" (quotation marks omitted)). This Court's precedent is that absolute immunity extends to state court judges. *Stevens v. Osuna*, 877 F.3d 1293, 1302 (11th Cir. 2017).  Judge Ruiz's actions can be presumed to be reasonable because her adjudications were *per curiam* affirmed at the state appellate level. *See id.* (stating one of the factors to consider in deciding whether to apply absolute immunity is the correctability of error on appeal); *Moskovits v. L. P. Evans Motors WPB, Inc.*, 303 So. 3d 543 (Fla. 3d DCA 2020).

Moskovits's argument that judicial immunity does not apply fails.  The only basis for his argument stems from Judge Ruiz's inquiry into his criminal history at the hearing on the motion to compel arbitration in the state court proceedings.  However, that exchange did not constitute a usurpation of power; rather, it was a minor, reasonable question that was resolved almost immediately.

The district court also did not err in concluding in the alternative that Judge Ruiz was entitled to qualified immunity as to Moskovits's claims against her in her individual capacity because he did not allege facts showing she violated any of his clearly established rights. *See Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (stating qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violated no clearly established statutory or constitutional rights of which a reasonable person would have known). Moskovits contends Judge Ruiz forfeited her claim to qualified immunity because he pleaded that she violated international law and committed fraud on the court, but those allegations are conclusory and vague.  Judge Ruiz satisfied her burden on proving she acted within her discretionary authority, and Moskovits failed to meet his burden that qualified immunity is not appropriate. *See id.* at 1294 (providing once the defendant establishes he was acting within his discretionary authority, the burden shifts to show qualified immunity is not appropriate).

In summary, the district court did not err in determining that Judge Ruiz was entitled to immunity, regardless of whether

the claims were brought against her in her official or individual capacity.  Accordingly, we affirm the district court as to the dismissal of the claims against Judge Ruiz.

## B.  The State Department

Moskovits concedes the State Department has sovereign immunity, but citing *Ex parte Young*, suggests dismissal is appropriate only if it identifies "the names of the known and unknown agents." Moskovits's reliance on *Ex parte Young* is misplaced.  The portion he cites does not stand for the proposition that an agency must be compelled to identify which of its agents may have committed alleged acts.  *Ex parte Young*, 209 U.S. 123, 160 (1908) ("The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States").  Rather, the cited material involves the question whether an already identified official's actions constitute official or individual conduct.  *See id.*  Regardless, the *Ex parte Young* exception is narrow and applies only to prospective relief, which Moskovits does not request.  *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) ("[T]he [*Ex Parte Young*] exception is narrow: It applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." (citation omitted)).  Since Congress has not waived the State Department's immunity as to any of the claims asserted against it, and Moskovits's only

argument relies on misinterpreted precedent, we affirm the dismissal with prejudice of all claims against the State Department.

## C. Unknown Agent Defendants

Moskovits asserts the district court erred in dismissing the claims against the Agent Defendants because he sufficiently pleaded his claims against the known and unknown Agent Defendants when he "conceded that the injurious conduct [wa]s not the conduct of the sovereign, but the actions of its officers."

The district court did not err in dismissing the claims against the Agent Defendants because Moskovits's amended complaint did not meet the minimum pleading requirements under Rule 8. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." (quotation marks omitted)). Moskovits largely made disjointed accusations about the various ways in which the Agent Defendants deprived him of his federal rights. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although *pro se* litigants are held to a less stringent standard, they are still required to comply with procedural rules, and Moskovits did not do so. *See Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007). Moreover, Moskovits did not attempt to identify the Agent Defendants by any unique titles that would satisfy the narrow exception to the general prohibition against fictitious-party pleading in federal court. *See Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (stating fictitious-party pleading is generally prohibited

in federal court, but there is a narrow exception "when the plaintiff's description of the defendant is so specific as to be at the very worst, surplusage" (quotation marks omitted)).  Moskovits's argument he pleaded as much information as he had in hopes to identify the agents later in discovery fails because he cannot circumvent the fact his amended complaint falls short of the Rule 8 requirements. *See Iqbal*, 556 U.S. at 678.  Accordingly, we affirm the district court as to the dismissal of the claims against the unknown agent defendants.

## D.  Legal Malpractice

Moskovits asserts the district court erred in dismissing his claims against Rex Russo for legal malpractice.  The district court did not err in dismissing Moskovits's legal malpractice claim against Russo.  His issues with his counsel in his prior state court proceedings did not provide a sufficient basis for a legal malpractice claim under Florida law and Moskovits failed to allege facts explaining how his former counsel neglected a duty of reasonable care or how he suffered harm as a consequence. *See Steele v. Kehoe*, 747 So. 2d 931, 933 (Fla. 1999) (providing a legal malpractice claim under Florida law has three elements: (1) the attorney's employment; (2) the attorney's neglect of reasonable care; and (3) the attorney's negligence resulted in and was the proximate cause of, loss to the client).  Additionally, Moskovits's argument Russo should have cited a narrow case dealing with arbitration agreements in the context of a claim brought under a Florida antitrust statute has no merit. *See Sabates v. Int'l Med. Ctrs.*, 450 So. 2d 514 (3d DCA

1984).  The district court did not err in concluding that Russo did not neglect a duty of reasonable care in failing to cite a seemingly irrelevant, non-binding case in the state proceedings.  *Steele*, 747 So. 2d at 933.  Additionally, Russo did not fail to object to Judge Ruiz's line of inquiry into his criminal history because there was nothing he could have objected to.  Accordingly, we affirm the district court's dismissal of the legal malpractice claims.

## E.  Sections 1983, 1985 & Alien's Action for Tort Claims

Moskovits contends he sufficiently pleaded his 28 U.S.C. § 1983 and § 1985 claims, and his action for tort under the Alien Tort Claims Act, 28 U.S.C. § 1350.

Moskovits's § 1983 claim fails because his amended complaint does not sufficiently allege the defendants were actors acting under color of law.  Rather, he recites conclusory statements that do not explain why the private defendants should be treated as state actors for purposes of § 1983.  *See Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (stating in order to prevail in a § 1983 suit, a plaintiff must show the defendant is a state actor and a private party may only be considered a state actor in rare circumstances).

Moskovits's § 1985 claim fails for at least three reasons: (1) his allegations as to the existence of a conspiracy are vague and conclusory; (2) he is not a member of a protected class; and (3) he fails to allege how his status as a felon resulted in a deprivation of constitutionally protected rights.  *See Childree v. UAP/GA AG*

*Chem, Inc.*, 92 F.3d 1140, 1146-47 (11th Cir. 1996) ("The elements of a cause of action under § 1985(3) are: (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States"); *Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997) (stating a claim under § 1985 requires a showing that a racial or class-based animus motivated the conspirators' actions).

Finally, his Alien Tort Claims Act claim fails because he does not allege any tangible violations of international law that would entitle him to bring a cause of action. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 724 (2004) (explaining while the Alien Tort Claims Act is only a jurisdictional statute and does not create new causes of action, it provides a cause of action for a small number of international law violations with the potential for personal liability). Rather, he cites his status as a Brazilian native and scattered Articles of the United National Universal Declaration of Human Rights in an attempt to justify his claim. Moskovits has not alleged a specific violation of international law sufficient to sustain a claim under 28 U.S.C. § 1350. Moreover, this Court should not rewrite his deficient pleading to allege such a claim. *See Albra*, 490 F.3d at 829.

In summary, the district court did not err in dismissing Moskovits's § 1983, § 1985, and Alien Tort Claims Act claims for failure

to state a claim.  The amended complaint is replete with conclusory allegations that do not satisfy the requirements of Rule 8, even taking Moskovits's *pro se* status into consideration.  *See Iqbal*, 556 U.S. at 678.  Accordingly, we affirm these dismissals.

## F.  State Fraud Claims

Moskovits contends he sufficiently pleaded his "fraud on the court" claim and the district court misapplied the *Rooker-Feldman* doctrine[2] in dismissing his state fraud claims.

The district court did not err in determining the *Rooker-Feldman* doctrine deprived it of subject-matter jurisdiction over Moskovits's fraud claims. *See Doe v. Fla. Bar*, 630 F.3d 1336, 1340 (11th Cir. 2011) (reviewing *de novo* "a district court's decision that the *Rooker-Feldman* doctrine deprives it of subject matter jurisdiction"). The application of *Rooker-Feldman* is narrow. *Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021). "It bars only cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* Moskovits's fraud claims are barred by *Rooker-Feldman* because Moskovits was requesting the entry of a judgment vacating the state order compelling arbitration, reopening the state case, and setting a hearing in the district court on the

---

[2] The *Rooker-Feldman* doctrine derives from *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923), and *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

causes of action asserted in the state complaint. *See id.* at 1213 (stating when assessing whether a complaint is barred by *Rooker-Feldman*, "[t]he question isn't whether the whole complaint seems to challenge a previous state court judgment, but whether resolution of each individual claim requires review and rejection of a state court judgment"). Although district courts do not lose subject matter jurisdiction over a claim simply because a party attempts to litigate in federal court a matter previously litigated in state court, the only conceivable relief for the fraud claim would be to vacate or modify the state court judgment. *Id.* at 1210. Accordingly, we affirm the dismissal of the state fraud claims.

## G.  Dismissal with Prejudice

The district court did not err in dismissing Moskovits's amended complaint with prejudice without first granting him leave to amend because amendment would have been futile. At this point, Moskovits had an opportunity to provide more sufficient allegations on numerous occasions, but instead repeated the same general language in his state court complaint, in his original federal complaint, in his amended complaint, in his responses to the motions to dismiss, and on appeal. As a *pro se* litigant, Moskovits was given an "extra dose of grace" several times, but it is clear that any future amendment at this point would be futile. *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1132-33 (11th Cir. 2019) (noting that in some situations, further leniency—or "an extra dose of grace"—may be warranted "in recognition of the difficulty in proceeding *pro se*"); *Woldeab v. Dekalb Cty. Bd. of Educ.*, 885 F.3d

1289, 1291-92 (11th Cir. 2018) (stating generally, a plaintiff proceeding *pro se* must receive at least one opportunity to amend the complaint if he or she might be able to state a claim by doing so). Another amendment would not change the fact the bases for Moskovits's claims hinge on conclusory, vague allegations that would still fail for various reasons at the motion-to-dismiss stage. *See L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020) (stating leave to amend would be futile "if an amended complaint would still fail at the motion-to-dismiss or summary-judgment stage"). Additionally, Moskovits did not argue he should have been given an opportunity to amend his complaint again in his objections to the magistrate judge's R&R. Accordingly, the dismissal of Moskovits's amended complaint with prejudice without first granting leave to amend was not error.

## II. CONCLUSION

Accordingly, we affirm the district court's order dismissing Moskovits's amended complaint with prejudice in its entirety.[3]

**AFFIRMED.**

---

[3] Moskovits asserts the district court erred in denying his motion to supplement his omnibus response and his motion to disqualify Russo and Richard Ivers as counsel. The district court did not err in denying each of Moskovits's motions. The information Moskovits wanted to supplement to his omnibus response was irrelevant and would not have made a difference in the outcome of the case. Additionally, the motion to disqualify was moot because the district court dismissed the case on the pleadings and thus Russo and Ivers would not be called as witnesses.